UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATIVE REAL ESTATE PLANNING GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NGON T. LE, et al.,<br><br>Defendants. | Case No.: 18cv838-MMA (NLS)<br><br>**ORDER:**<br><br>**(1) GRANTING THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT;**<br><br>[Doc. No. 25] |
| NGON T. LE,<br><br>Cross Claimant,<br><br>v.<br><br>INNOVATIVE REAL ESTATE PLANNING GROUP, INC., et al.,<br><br>Cross Defendants. | **(2) DENYING NGON T. LE'S CROSS MOTION FOR SUMMARY JUDGMENT; AND**<br><br>[Doc. No. 31]<br><br>**(3) REMANDING REMAINING STATE LAW CLAIMS TO STATE COURT** |

On November 29, 2017, Plaintiff Innovative Real Estate Planning Group, Inc. ("Innovative") filed this quiet title action against Ngon T. Le ("Le") and "all other persons unknown, claiming any right, title, estate, lien or interest in the real property described in the complaint, adverse to [Innovative's] ownership or any cloud on plaintiff's title thereto." Doc. No. 1-2 ("Compl."). On February 26, 2018, Le filed a

cross complaint against Innovative, Vladymir Frazilus, Chien Thi Nguyen, Dung A Nguyen, Canh M. Phan, Canh Tran, and Thi Truong Nguyen, Trustees of the Truong Family Trust, Elizabeth Persons, the United States of America ("USA"), the State of California, the City of San Diego, Fire Prevention Services, Inc., and "all persons unknown, claiming any right, title, estate, lien or interest in the real property described in the complaint, adverse to plaintiff's ownership or any cloud on plaintiff's title thereto."[1] Doc. No. 3 ("Cross Compl."). On May 1, 2018, USA removed the action to this Court. Doc. No. 1.

The USA filed a motion for summary judgment against Le. Doc. No. 25. Le filed a response in opposition (Doc. No. 32) and a cross motion for summary judgment against the USA (Doc. No. 31). USA replied to Le's opposition (Doc. No. 33) and filed a response in opposition to Le's cross motion (Doc. No. 39). Le replied to the USA's opposition. Doc. No. 40. The Court found these matters suitable for determination on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. Nos. 34, 41. For the following reasons, the Court **GRANTS** the USA's motion for summary judgment and **DENIES** Le's cross motion for summary judgment. Also, the Court **REMANDS** the remaining state-law claims raised in the Complaint and Cross Complaint to the state court in which they were originally filed.

//
//

---

[1] Le voluntarily dismissed the City of San Diego and Fire Prevention Services, Inc. Doc. Nos. 14-15. Le also filed a motion for summary judgment as to the first, second, fifth, sixth, and seventh causes of action in Innovative's complaint, the first cause of action in Le's cross complaint, and partial summary judgment as to the seventh and eighth causes of action in Le's cross complaint. Doc. No. 30. The motion is unopposed. *See* Docket. Finally, Le filed an unopposed motion for default judgment against cross-defendants Chien Thi Nguyen, Thi Truong Nguyen, Trustee of the Truong Family Trust, Canh Tran, Trustee of the Truong Family Trust, Canh M. Phan, Dung A. Nguyen, and Elizabeth Persons. *See* Doc. No. 29; *see also* Docket.

# MATERIAL FACTS[2]

From May 5, 2017 to May 10, 2017, San Diego County held an online auction for several pieces of tax-defaulted real property ("auction"), including two pieces of undeveloped land identified as Parcel Nos. 541-130-11-00 and 541-2 0-12-00 (collectively, "Le Properties"). Doc. No. 25-5 ("Heaton Depo.") at 5:23-6:5, 19:22-20:5, 36:14-36:17; *see also* Cross Compl. ¶ 13; Doc. No. 31-4, Exhibit 3 at 3. To advertise the auction, San Diego County published a notice of the auction in the San Diego Examiner and published information on its website.[3] Doc. No. 25-3, Exhibit A ("Notice of Tax Auction"); Heaton Depo. at 13:1-13:17; Doc. No. 25-4 ("Le Depo.") at 18:24-19:2; SD Examiner Publication.

Prior to the auction, the Le Properties were owned by Phuc N. Doan and Longngoc N. Doan (the "Doans").[4] Notice of Tax Auction; Heaton Depo. at 19:8-19:12; SD Examiner Publication at 5; Doc. No. 29-2, Exhibits A-C. On April 6, 2017, the Internal Revenue Service ("IRS") recorded a Notice of Federal Tax Lien against the Doans for failing to pay approximately $1.6 million in federal income taxes for the 2010 and 2012 tax years.[5] Doc. No. 25-3, Exhibit B ("Form 2866"), Exhibit C ("Notice of Federal Tax Lien"); Doc. No. 31-4, Exhibit 3 at 3.

Le bid and ultimately won the Le Properties.[6] Le Depo. at 24:8-24:11; Doc. No. 30-4 ("Le Decl.") ¶ 1. Following the auction, San Diego County prepared a Tax Sale

---

[2] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits. Disputed material facts are discussed in further detail where relevant to the Court's analysis. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

[3] The Court **GRANTS** Le's request to judicially notice the "Proof of Publication" of the Notice of Public Internet Auction in the San Diego Examiner [Doc. No. 31-3, Exhibit 1 ("SD Examiner Publication")]. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of 'matters of public record.'").

[4] The Court **GRANTS** Le's request to judicially notice the Quitclaim Deed and Tax Deeds to the Le Properties. *See Lee*, 250 F.3d at 689.

[5] The Court **DENIES** Le's request to judicially notice USA's answer to Le's cross-complaint.

[6] The Court **DENIES** Le's request to judicially notice his previously filed declaration and instead cites directly to that declaration.

Deed, listing the date the auction sale was conducted as May 9, 2017. Doc. No. 25-3, Exhibit E ("Tax Deed"); Doc. No. 29-2, Exhibits A-C. The IRS did not receive notice of the auction at least 25 days prior to the auction. Heaton Depo. at 30:5-30:7, 33:10-33:13.

## EVIDENTIARY OBJECTIONS

Le raises a variety of evidentiary objections to the USA's evidence. Doc. No. 32-2. These objections are raised on the grounds that the evidence is irrelevant, vague, assumes facts not in evidence, or misstates the evidence or law. *Id.* "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). "[O]bjections to evidence on the ground that it is irrelevant . . . [is] duplicative of the summary judgment standard itself" and unnecessary to consider here. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted."). Accordingly, the Court does not consider any relevance objections. Le's remaining objections that the statements misstate the evidence or law, assume facts not in evidence, or are vague, are objections to USA's characterization of the evidence rather than to the evidence itself. Thus, the Court will not consider these objections. *See Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008) (noting that the parties' "'evidentiary objections to [their adversary's] separate statements of undisputed facts are not considered because such objections should be directed at the evidence supporting those statements'").

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The Court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'set[s] forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Le asserts one cause of action against the USA, seeking a decree that Le owns the property free and clear of the federal tax lien. Cross Compl. ¶¶ 15-20. The sole dispute between the parties is whether the date of sale is May 5, 2017 or May 9, 2017. The USA contends the date of sale is May 9, 2017—the date the auction concluded—and Le avers the date of sale is May 5, 2017—the date the auction commenced.

Title 26, section 7425(b) of the United States Code governs nonjudicial sales of property to which the government claims a federal tax lien. 26 U.S.C. § 7425(b). Pursuant to § 7425(b), "[a] nonjudicial sale of property is made 'subject to and without disturbing' federal tax liens if (1) the federal tax liens were filed more than 30 days before the sale, and (2) notice of the sale is not given to the IRS in accordance with § 7426(c)(1)." *Orme v. United States*, 269 F.3d 991, 994 (9th Cir. 2001) (quoting 26

U.S.C. § 7425(b)); *see Quality Loan Serv. Corp. v. 24702 Pallas Way*, 635 F.3d 1128, 1134 (9th Cir. 2011). If the IRS is not given sufficient notice of a sale and the federal tax lien was timely filed, any purchaser of the property takes the property subject to the IRS's lien.

The parties agree that USA filed a Notice of Federal Tax Lien against the Doans on April 6, 2017. *See* Notice of Federal Tax Lien. The parties also agree that the USA was not given notice at least 25 days prior to May 9, 2017. Heaton Depo. at 30:5-30:7. Thus, the date of sale is crucial in determining whether the federal tax lien was disturbed by the sale of the Le Properties. If the date of sale is May 5, 2017, then Le took the property free and clear of the federal tax lien. On the other hand, if the date of sale is May 9, 2017, then Le took the property subject to and without disturbing the federal tax lien.

Le argues the government was required to timely record its notice of federal tax lien in accordance with California and federal law.[7] Doc. No. 32 at 2-3; *see* Doc. No. 40 at 5-6. According to Le, the government was required to send notice to any parties of interest "'[n]ot less than 45 days nor more than 120 days *before the proposed sale date . . . .*" Doc. No. 32 at 3 (quoting Cal. Rev. & Tax Code § 3701); Doc. No. 31-1 at 6. However, "it is clear Congress intended federal law to 'occupy the field' in resolving [issues related to discharging a tax lien]." *Russell v. United States*, 551 F.3d 1174, 1180 (10th Cir. 2008) (finding § 7425(b) preempts state law regarding extinguishment of the government's lien because federal law occupies the field). As such, section "7425(b) 'dictates the method for discharging a tax lien when the underlying property is sold.'" *Id.*

---

[7] Le contends federal courts must give "considerable deference to state law on matters relating to real estate," such that tax foreclosure sales conducted by state and local governments are governed by state law. Doc. No. 40 at 5 (citing *Tracht Gut, LLC v. L.A. Cnty. Treasurer & Tax Collector*, 836 F.3d 1146, 1153 (9thth Cir. 2016)). The Ninth Circuit has held that "tax foreclosure sales conducted by state and local governments are governed by state law." *Tracht Gut, LLC*, 836 F.3d at 1153. However, the Ninth Circuit cautioned that state law only governs "'[a]bsent a clear statutory requirement to the contrary.'" *Id.* (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 539 (1994)). As discussed below, § 7425(b) occupies the field of nonjudicial sales of property to which the government claims a federal tax lien.

(quoting *Security Pac. Mortgage v. Choate*, 897 F.2d 1057, 1058 (10th Cir. 1990)); *see also Orme*, 269 F.3d at 994 ("Congress has spoken clearly on the divestiture of federal tax liens in sales of property."). Further, requiring the government to file a notice of federal tax lien at least 45 days and no more than 120 days before the proposed sale directly conflicts with § 7425(b), which provides that a federal tax lien continues to attach to property so long as the United States recorded a notice of lien at least thirty days before the sale and it did not receive notice of such sale at least twenty-five days in advance. *See Russell*, 551 F.3d at 1180. Accordingly, the government was not required to file its notice of federal tax lien between 45 and 120 days before the proposed sale to preserve its lien.

Additionally, Le avers that the date of sale is defined by California law, which provides that the date of sale is "'the date upon which a public auction begins.'" Doc. No. 32 at 3 (quoting Cal. Rev. & Tax Code § 3692.1(b))). Le also cites to California's Revenue and Tax Code § 3707, which states that "[t]he commencement of the tax sale constitutes the actual sale date regardless of auction conclusion." *Id.* (quoting Cal. Rev. & Tax Code § 3707).[8] In addition to Congress occupying the field in resolving issues related to discharging a tax lien, defining "date of sale" pursuant to California law contradicts with the statute's own definition, which provides:

> In the case of a nonjudicial sale subject to the provisions of section 7425(b), in order to compute any period of time determined with reference to the date of sale, the date of sale shall be determined in accordance with the following rules:
> (1) In the case of divestment of junior liens on property resulting directly from a public sale, the date of sale is deemed to be the date the public sale is held, regardless of the date under local law on which junior liens on the property are divested or the title to the property is transferred . . . .

---

[8] The Court **DENIES** Le's request to judicially notice the California Senate Committee on Governance and Finance report on AB 2746 and the Assembly Concurrence in Senate Amendments to AB 2746 as it did not rely on these documents in ruling on the cross motions for summary judgment.

26 C.F.R. § 301.7425-2(b)(1).[9] As such, the Court looks only to federal law, and not California's revenue and taxation code, to define "date of sale."[10]

The Fourth Circuit has interpreted the date the "sale is held" to mean the date the purchaser obtained an interest in the property, even an equitable interest, as determined by state law. *Southwest Prods. Co.*, 882 F.2d at 117. In *Southwest Prods.*, the Fourth Circuit asked whether the IRS timely exercised its right of redemption under § 7425(d)(1). *Id.* The Fourth Circuit reasoned:

> [T]he government's right of redemption is not triggered by the transfer of the property's title. Rather it is triggered by the occurrence of the 'sale' at the public auction. Of course, it is axiomatic that the right cannot be exercised against a party that does not have an interest in the subject property. So, even if the IRS properly responded to the notice of sale by seeking redemption, the redemption would be ineffective if the IRS tendered the check to the wrong party.

*Id.* Le argues that this case is not about redemption and accordingly the date of sale used in redemption cases is a "red herring." Doc. No. 40 at 3. However, § 7425(d)(1) requires the government to redeem the property within "120 days from the date of sale." *Id.* The date of sale under § 7425(d) is also the date the public sale is held. *See id.* As such, the date the "sale is held" for purposes of redemption is the same date the "sale is held" for purposes of determining whether a purchaser of property at a nonjudicial sale took the property subject to and without disturbing a federal tax lien. Moreover, the Seventh Circuit found the date of sale for purposes of § 7425(b) to be the date the purchaser

---

[9] The Court **DENIES** Le's request to judicially notice the IRS manual and instead cites to the relevant IRS code.

[10] Le maintains that courts often use a state's "date of sale" definition in applying the facts of a case to § 7425(b). Doc. No. 32 at 7-10. However, the cases cited did not apply a state's "date of sale" definition; rather those courts used state law to determine when a party obtained an interest in the property, which aided those courts in determining the date of sale. *See Ballinger v. Geithner*, 437 F. App'x 480, 482 (7th Cir. 2011) (citing *In re Smith*, 614 F.3d 654, 659 (7th Cir. 2010) for the assertion that the date of sale is the date the purchaser records the tax deed because that is when the purchaser obtains an interest in the property); *Southwest Prods. Co. v. United States*, 882 F.2d 113, 117 (4th Cir. 1989) (noting the date of sale or the date the public sale is held is the date when the purchaser acquired an equitable interest in the property according to Virginia law).

records the tax deed because, under Illinois law, that is when the purchaser obtains an interest in the property. *See Ballinger*, 437 F. App'x at 482; *see also In re Smith*, 614 F.3d at 659 (noting that the date the purchaser records the tax deed is when the purchaser obtains an interest in the property under Illinois law).

California law provides that "[i]n an involuntary sale such as foreclosure, equitable title is transferred to the purchaser at the foreclosure auction with acceptance of the highest bid . . . ." *In re: RW Meridian LLC*, 564 B.R. 21, 30 (B.A.P. 9th Cir. 2017); *see also Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 440-41 (Ct. App. 2003) (holding that acceptance of the final bid in a nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender). Here, Le did not obtain any interest in the Le Properties until acceptance of the highest bid on May 9, 2017. *See In re RW Meridian LLC*, 564 B.R. at 30; Le Depo. at 24:8-24:11; Le Decl. ¶ 1. As such, the date of sale for purposes of § 7425(b) is May 9, 2017. In fact, the tax deed states that the auction sale for the Le Properties was conducted on May 9, 2017.[11] Tax Deed. Accordingly, the sale of the Le Properties was made subject to and without disturbing the USA's tax liens. Therefore, the Court **GRANTS** the USA's motion for summary judgment and **DENIES** Le's cross motion for summary judgment.

## REMAINING STATE LAW CLAIMS

Because this Order resolves the only claim this Court has original jurisdiction over, only Plaintiff's and Le's state law claims remain. *See* Compl. (asserting only state law causes of action against non-diverse defendants); *see also* Cross Compl. (asserting only state law causes of action against non-diverse defendants—except for the cause of action

---

[11] Le argues the Court should use the dictionary definition of "held" to interpret § 7425b-2. Doc. No. 31-1 at 5-6. He claims "held" is synonymous with "conducted" and the County's notice of the sale states the "sale will be conducted at [a website URL] Friday, May 5, 2017, . . . through Wednesday, May 10, 2017 . . . ." *See* Doc. No. 31-1 at 6; *see also* SD Examiner Publication. Le avers that this proves the date of sale is May 5, 2017. Doc. No. 31-1 at 6. However, the Tax Deed states that the auction sale was "conducted on **May 9, 2017**." Tax Deed. Thus, the Court is not persuaded by Le's argument and **DENIES** Le's request to judicially notice the dictionary definition of "held."

9

against the USA, which has been resolved by this Order). "Under 28 U.S.C. § 1367(c)(3), a district court has discretion to elect not to exercise supplemental jurisdiction over state claims if it has dismissed the federal claims over which it had original jurisdiction." *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001). In dictum, the United States Supreme Court stated that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Ninth Circuit explained that this statement "'simply recognizes that in the *usual* case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.'" *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Accordingly, this Court declines to exercise supplemental jurisdiction over the parties' remaining state law claims pursuant to 28 U.S.C. §1367(c).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the United States of America's motion for summary judgment (Doc. No. 25) and **DENIES** Le's cross motion for summary judgment (Doc. No. 31). Additionally, the Court **REMANDS** the parties' remaining state law claims to San Diego Superior Court. The Clerk of Court is instructed to enter judgment in favor of the United States of America on Cross Claimant Ngon T. Le's first cause of action for quiet title.

**IT IS SO ORDERED**.

Dated: July 22, 2019

Hon. Michael M. Anello
United States District Judge